2007 BNH 012
_____

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 05-12919-MWV |
| | Chapter 7 |
| Phillip L. Howard, Jr., | |
|     Debtor | |
| | |
| Elaine M. Flanagan, | |
|     Plaintiff | |
| | |
| v. | Adv. No. 05-1196-MWV |
| | |
| Phillip L. Howard, Jr., | |
|     Defendant | |

*Elaine M. Flanagan*
*Pro Se*

*John M. Glynn, Esq.*
*Attorney for Defendant*

## MEMORANDUM OPINION

The Court has before it the amended complaint of Elaine M. Flanagan (the "Plaintiff") in which she brings seven counts seeking to except certain debts from discharge under section 523 and to deny Phillip L. Howard, Jr. (the "Defendant"), a discharge under section 727. The Court held a half-day trial on October 25, 2006. The Plaintiff is pro se and the Defendant was represented by counsel at trial. After the Plaintiff rested her case, defense counsel orally moved for a directed verdict on all counts in favor of the Defendant. The Court granted the motion with regard to Counts I, IV, and V because those counts unquestionably do not apply to the facts of this case.[1] The Court denied the motion for a directed verdict on Counts II, III, VI, and VII, which are the subjects of this opinion.

---

[1] Counts I and IV were brought pursuant to section 523(a)(4) and (11), respectively, which involve debtors acting in fiduciary capacities. Count V was brought pursuant to section 523(a)(12), which involves the maintenance of capital in federal depository institutions.

<u>JURISDICTION</u>

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

<u>BACKGROUND</u>

In the first part of 2004, the parties were romantically involved. While the Plaintiff claims that the Defendant lived with her from February until about June, the Defendant claims that he only lived with her for about a month. Prior to conceding this at trial, the Defendant had denied ever living with the Plaintiff. (Pl.'s Ex. 6.) On April 24, 2004, the parties bought a 1998 Jeep Wrangler (the "Jeep" or the "vehicle") for $15,500; the Plaintiff co-signed the loan with Granite State Credit Union ("Granite State"). (Pl.'s Exs. 1 & 2.) The parties executed an agreement outlining each party's rights with regard to the vehicle, with the Defendant being responsible for monthly loan payments, the down payment, insurance, registration, maintenance, and repairs. (Pl.'s Ex. 3.) The agreement states that the Jeep was to be the Defendant's "primary vehicle." The parties also bought cellphones together.

The controversy began in early June 2004, when the Defendant drove the Jeep from New Hampshire to Colorado. The Plaintiff claims that the Defendant left without telling her and took the Jeep without permission, though the Defendant testified that the Plaintiff knew he was leaving and offered him her truck, but he chose the Jeep. The Defendant also took one of the cellphones. After locating the Defendant in Colorado, the Plaintiff notified Granite State of the Defendant's and the Jeep's whereabouts. The Defendant apparently agreed to continue making the monthly loan payments and to obtain insurance in Colorado, and the Plaintiff cancelled the New Hampshire insurance policy. (Pl.'s Ex. 7.) The Defendant failed to make payments or insure the vehicle, causing Granite State to begin repossession efforts. (Pl.'s Ex. 9.) The Plaintiff alleges that the Defendant, knowing of the impending repossession,

intentionally damaged the Jeep. The Jeep was repossessed and sold for $5,500, leaving an outstanding loan balance of $9,980. (Pl.'s Ex. 11.)

Granite State filed a collection proceeding in state court against the parties that has been stayed by the bankruptcy. The Plaintiff also filed an action against the Defendant in state court and secured judgment of $462.04 for vehicle and cellphone related costs,[2] as well as $1,718,72 to be paid by the Defendant directly to U.S. Cellular, with the caveat that if the Defendant defaulted, a judgment in the amount of the outstanding payments would be awarded the Plaintiff. The Defendant filed a voluntary Chapter 7 bankruptcy petition on July 26, 2005.

## DISCUSSION

Counts II and III seek to except from discharge under section 523 debts owed to U.S. Cellular and Granite State, and the judgment debt awarded the Plaintiff. Section 523 excepts certain debts from being discharged in bankruptcy. "Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy and the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1994). In order to prevail under section 523, the Plaintiff must prove her case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991)

Counts VI and VII are brought pursuant to section 727, which provides grounds for denying a debtor a Chapter 7 discharge. However, "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor" and "[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (quoting Dilworth v. Boothe, 69 F.2d 621, 624 (5th Cir. 1934)). While bankruptcy relief is

---

[2] In her amended complaint, the Plaintiff claims that this obligation has risen to over $800 because of "applicable payments & fees incurred by the Plaintiff." This could be the same obligation that the Defendant listed in his Schedule F as an $800 loan to the Plaintiff.

- 3 -

limited "to the 'honest but unfortunate debtor[,]'" allegations of dishonesty must be proved by a preponderance of the evidence in order to deny discharge. Grogan v. Garner, 498 U.S. at 286–87 (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)); Watman v. Groman (In re Watman), 458 F.3d 26, 32 (1st Cir. 2006) (citing Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002)).

**I.       Section 523**

    A.      Count II

Count II is brought pursuant to section 523(a)(6), which excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).[3] Each of the following four elements must be proved by a preponderance of the evidence:

1. the debtor injured another entity or the property of another entity
2. willfully
3. and maliciously,
4. and, by such injury, gave rise to the debt at issue.

M & I Heat Transfer Prods., Ltd. v. Gorchev (In re Gorchev), 275 B.R. 154, 165 (Bankr. D. Mass. 2002).

There is no question that the Plaintiff has been injured and continues to suffer financial injuries because of the Defendant's removal of the vehicle and cellphone and his failure to make payments on those items. As for the Plaintiff's contention that the Defendant intentionally damaged the Jeep once repossession was imminent, the Court only has the Plaintiff's statements to consider, but for the purposes of section 523(a)(6) the Court will presume that the damage occurred, especially because any damage to the Jeep resulted in a lower resale price, becoming part of the Plaintiff's financial injury.

Proving "willfulness" is a more difficult matter requiring proof that the Defendant acted with actual intent to cause injury. Kawaauhau v. Geiger, 523 U.S. 57, 61–62 (1998). Being aware that an intentional act or omission is likely to cause an injury is not the same as intending to cause an injury. See

---

[3] All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, et seq.

id. at 997.  There are three ways in which the Defendant arguably injured the Plaintiff; taking the Jeep and the cellphone, not making any payments, and damaging the Jeep.  With regard to all three, the Plaintiff has not presented evidence that these acts or omissions were done for the purpose of injuring the Plaintiff or the Jeep.  The Jeep was the Defendant's primary vehicle, so, absent evidence to the contrary, the Defendant could have felt the Jeep was his to use as long as he made the payments.  As for the payments, the Defendant denies that he failed to pay in order to injure the Plaintiff, rather he testified that he did not have the money to make the payments.  With regard to alleged damage to the Jeep, the Defendant denies having driven it excessively and testified that he kept it parked at his Colorado residence.  While the Court doubts that the Defendant stopped driving the Jeep, even presuming that the Jeep was damaged, there is no proof that the damage resulted from the Defendant's *intention* to cause that damage.

Section 523(a)(6) sets a high bar for excepting a debt from discharge, and the lack of evidence indicating a willful intent to injure compels the Court to find in favor of the Defendant on Count II.

    B.    <u>Count III</u>

Although the amended complaint describes Count III as being pursuant to section 523(a)(2)(A)(i)(ii)(iii), no such section exists.  However, because the Plaintiff alleges that the Defendant misrepresented his financial condition, the Court concludes that the Plaintiff intended to bring this Count under section 523(a)(2)(B).  That section excepts from discharge a debt

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>     . . . .
>
>     (B) use of a statement in writing—
>
>         (i) that is materially false;
>
>         (ii) respecting the debtor's or an insider's financial condition;
>
>         (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

>> (iv) that the debtor caused to be made or published with the intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).  The Plaintiff argues that the Defendant intentionally misrepresented his income on the Jeep loan agreement, inducing Granite State to rely on the misrepresentation.  The Plaintiff points to the Defendant's statement of financial affairs listing his 2004 gross income as $17,362, and contrasts it with Exhibit 2, which is a photocopy of the vehicle loan agreement with Granite State.  The loan agreement has the Defendant's gross annual income of $3,160 typed in, and crossed out by hand, with $52,000 written in.  The original document was not presented at trial and it is impossible to verify that the $52,000 was written in by the Defendant or at his direction at or about the time the loan was made.  The Plaintiff explained that the $3,160 figure represented the Defendant's monthly income and was mistakenly typed in by Granite State, and that Granite State fixed the mistake.  The Court noted, though, that $3,160 annualized is not $52,000.  Then the Plaintiff explained that the $3,160 was estimated, based on the Defendant's weekly income of $600–$700.  However, those weekly incomes would yield between $2,400 and $2,800 monthly, not $3,160.  The Court does not recite all of this to imply that the Plaintiff is not being truthful, but to illustrate the lack of reliable evidence to prove her case.  Even if the $52,000 was written in by the Defendant at the time of signing the loan, April 29, 2004, that figure was admittedly projected.  At the time of the loan, the Defendant may have been on track to earn more money than he actually ended up making.  Finally, the Court notes that the Plaintiff signed the loan agreement, false information or not.

The loan agreement is not equivalent to proof by a preponderance that (1) the Defendant falsified his income; (2) that Granite State reasonably relied on the $52,000 figure rather than relying on the fact that the Defendant had a co-signer with a good credit history; and (3) that, assuming the Defendant did provide false information, he did so with the intent to deceive.  The Court finds for the Defendant on Count III.

**II.** **Section 727**

    A.    Count VI

Section 727(a)(2)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

    . . . .

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

        (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A). The Plaintiff appears to make three arguments under section 727(a)(2)(A). The first is that the Defendant hindered her by listing the wrong address on the creditor matrix.[4] However, section 727(a)(2)(A) requires more than intentionally hindering, delaying, or defrauding a creditor.[5]

Second, the Plaintiff argues that the Defendant intended to hinder or defraud her and Granite State by damaging the Jeep. However, the Plaintiff has provided no evidence proving that the Defendant caused the damage and with the intent to hinder, delay, or defraud. Third, the Plaintiff appears to argue that the Defendant intended to hinder, delay, or defraud her when he removed the Jeep and cellphone from New Hampshire. However, the Defendant was the co-owner of both items, and there is no evidence proving the requisite intent. The Court finds for the Defendant on Count VI.

---

[4] As for whether the Defendant intentionally listed the wrong address, it is difficult to determine. The matrix lists 17 Starreit Road, which was her correct street address (though spelled wrong), but the Plaintiff receives her mail at a post office box. Copies of cancelled checks and the addresses shown on most of the exhibits support this. The Defendant testified that he received his mail at a post office box while he lived with her and thought that she received her mail at home. The Court has doubts that during the course of their cohabitation the Defendant never learned where the Plaintiff receives her mail.

[5] Section 727(a)(2)(A) does not deny a discharge simply for intentionally hindering a creditor, but for intentionally hindering, delaying, or defrauding a creditor by transferring, removing, destroying, mutilating, or concealing property of the debtor within one year of the bankruptcy.

B.      Count VII

The Plaintiff apparently seeks relief pursuant to section 727(a)(4)(A) as well as (a)(4)(B), which provide:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account; [or]

(B) presented or used a false claim[.]

11 U.S.C. § 727(a)(4)(A) and (B).

First, section 727(a)(4)(B) is not applicable, as the falsehoods alleged by the Plaintiff are not the types of "claims" contemplated in the statute. For purposes of section 727(a)(4)(B) the term "claim" is defined by section 101(5). "Claim as so defined does not mean 'representation' or 'statement' but 'right to payment' or 'right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.'" See In re Gorchev, 275 B.R. at 164 (quoting 11 U.S.C. § 101(5)). None of the allegations made by the Plaintiff involve a false claim.

With regard to section 727(a)(4)(A), the Plaintiff must prove that "(1) the debtor knowingly and fraudulently made a false oath, and (2) the false oath related to a material fact in connection to the bankruptcy case." Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 67 (1st Cir. 2004). "Material," for purposes of this section, means "real and substantial, not merely technical and conjectural." In re Tully, 818 F.2d at 110.

The first alleged falsehood regards the Defendant's monthly residential rent paid to his landlord/father, with the Plaintiff arguing that the Defendant listed two inconsistent rent amounts in his petition. On the Defendant's statement of financial affairs, the Defendant listed total rent payments of $2,400 for the ninety days preceding the petition date. On Schedule J, he listed a monthly rent of $800. These figures are perfectly consistent, as $2,400 is not rent for one month, but the total for three months

at $800 per month. Next, the Plaintiff contends that the Defendant does not pay any rent to his father. However, the Plaintiff has not produced any evidence indicating that the Defendant has fabricated his rental payments.

The Plaintiff also argues that the Defendant has underreported his income in his petition, where he listed the following gross incomes: $16,903 for 2003; $17,362 for 2004; and $800 for 2005 (up to July 27). Schedule I shows a current monthly gross wage of $2,143. The Plaintiff questions how the Defendant could pay $800 per month in rent, $625 to his bankruptcy attorney, and $209 for filing his bankruptcy petition if he has only earned $800 in 2005. While these are valid questions, there is no evidence that the Defendant has earned more money than he reported. What is known is that at some point he lost his job.

The Plaintiff contends that the Defendant may have had a financial interest in his father's business in the past, might presently have an interest, or may have one in the foreseeable future. However, the Plaintiff has presented no evidence on this issue, and there is no indication that an interest in the father's business has value. The Plaintiff also argues that the Defendant's possession of a commercial driver's license indicates a higher earning potential. However, section 727(a)(4) is not concerned with earning potential, but with whether the Defendant knowingly and fraudulently reported less than he actually earned. The Plaintiff also points out that the Defendant stated in his petition that the Jeep was repossessed in 1998 rather than in 2004. This is not an important error.

The Plaintiff also argues that the Defendant failed to list a closed bank account in his petition, pointing to Exhibit 15, which is half of a ripped check payable to the Defendant and showing a bank account number. The problem for the Plaintiff is that the statement of financial affairs instructs debtors to list all accounts closed within one year of the petition date. There is no date on Exhibit 15, though the Plaintiff established that the check is generally dated to April 2004, as the Defendant was working for the employer shown on the check at the time, and the Plaintiff found the check in her home where the Defendant lived at about that time. However, the Defendant filed his bankruptcy petition on July 26,

2005, approximately fifteen months later.  Thus, the account could have been closed more than one year prepetition.  There is no evidence indicating otherwise.  The Plaintiff also points out that the Defendant omitted prior addresses from his statement of financial affairs.  Although the Defendant did live with the Plaintiff for a short period and in Colorado for a time, there is no evidence that these omissions are due to anything approaching fraud.

The Plaintiff also points out that on his schedules the Defendant did not list her as a co-debtor on the Granite State loan and also listed her street address on the creditor matrix rather than her post office box.  There has been no evidence of fraudulent intent.  Finally, the Plaintiff points out that the Defendant listed his nineteen year old daughter as a dependant on Schedule I and then stated at trial that he does not support her.  The Defendant's trial testimony made clear that he simply did not understand what the form requested.

Because of the immateriality of the mistakes and omissions and lack of evidence of a knowing and fraudulent intent, the Court finds for the Defendant on Count VII.

## CONCLUSION

For the Plaintiff to have succeeded on any count, she needed to prove her case by a preponderance of the evidence.  However, in the absence of probative evidence, the Court is essentially left with her word versus his word, and in the face of the Bankruptcy Code's general tendency that a tie goes to the debtor, the Court has no choice but to find for the Defendant on Counts II, III, VI, and VII.  This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a final judgment consistent with this opinion.

DATED this 7th day of February, 2007, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge